UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-20297-CIV-BROWN

CANON LATIN AMERICA, INC.,

    Plaintiff,

vs.

LANTECH (CR), S.A.,

    Defendant.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**This matter** is before the Court on Plaintiff Canonlat's Motion for Summary Judgment (DE 206) and Defendant Lantech's Motion for Summary Judgment (DE 246). The Court has reviewed the Motions, Responses, Replies, and all pertinent portions of the file. In addition, a hearing was held on June 28, 2007 and the Court adopts the transcript of that hearing by reference herein.

## FACTS

In 1996, Canon Latin America ("Canonlat"), a Florida corporation headquartered in Miami, Florida, entered into a distributorship agreement with Lantech (CR), S.A. ("Lantech"), a Costa Rican corporation. In 2003, the parties entered into a superseding distribution agreement ("the Agreement"). Both the original and superseding agreements were negotiated at arms-length, and entered into voluntarily.

The Agreement contains two paragraphs which pertain to Lantech acting as "a non-exclusive authorized distributor." Agreement ¶¶ 1.1, 2.4. Additionally, Paragraph Nineteen (19) of the Agreement, the "Choice of Law and Forum" clause, states, inter alia, as follows:

    19. CHOICE OF LAW AND FORUM

        THIS AGREEMENT IS MADE WITHIN THE STATE OF FLORIDA AND SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA. IF A DISPUTE ARISES AS A RESULT OF THE TERMINATION OF THIS

> AGREEMENT PURSUANT TO PARAGRAPHS 11 OR 15.3 ABOVE, AND IF SUCH DISPUTE CANNOT BE SETTLED THROUGH NEGOTIATION, THE PARTIES AGREE FIRST TO ATTEMPT IN GOOD FAITH TO RESOLVE THE DISPUTE BY MEDIATION IN MIAMI, FLORIDA, ... **IN THE EVENT OF ANY LITIGATION BETWEEN THE PARTIES, DISTRIBUTOR CONSENTS TO THE JURISDICTION AND VENUE OF THE STATE AND FEDERAL COURTS SITUATED WITHIN THE STATE OF FLORIDA UPON SERVICE OF PROCESS MADE IN ACCORDANCE WITH THE STATUTES OF FLORIDA AND THE UNITED STATES, RESPECTIVELY. DISTRIBUTOR FURTHER AGREES THAT ALL SUITS COMMENCED BY DISTRIBUTOR AGAINST CANONLAT UPON ANY AND ALL CAUSES OF ACTION, WHETHER OR NOT SUCH CAUSES OF ACTION HAVE ARISEN UNDER THIS AGREEMENT AND REGARDLESS OF THE LEGAL THEORY UPON WHICH SUCH CAUSES OF ACTION ARE BASED, SHALL BE BROUGHT EXCLUSIVELY IN A STATE OR FEDERAL COURT SITUATED WITHIN THE STATE OF FLORIDA.** * * *

Agmt. ¶19. (emphasis added).[1]

In 2003 and 2004, Lantech became delinquent on its account with Canonlat in the amount of $247,000. In or about March, 2004, Canonlat hired a new distributor, Santa Barbara Technology, S.A. ("SB Technology"), and notified Lantech.

On November 11, 2004, Lantech filed an action against Canonlat in Costa Rica seeking indemnity from Canonlat as well as SB Technology, claiming damages in the amount of $6,303,366.89, under Costa Rica Law No.6209, entitled Representatives of Foreign Companies Act (hereinafter "Law 6209").[2]

---

[1] It appears that in a related Costa Rica proceeding, discussed infra, Lantech submitted a version of the Agreement that contained certain language which differs from the version of the Agreement submitted to this Court. See Canonlat's Statement of Uncontroverted Facts and Response to the Declaration of R. van der Putten p. 2-3. This Court bases its ruling on the version of the documents which the parties have represented in this proceeding to be correct.

[2] The pertinent portions of that law state as follows:

> **Article 2. - (Recission of the agreement for reasons alien to the representative, distributor or manufacturer. Consequences).** If the representation, or distribution or manufacturing agreement is rescinded for reasons beyond the control of the representative, distributor or manufacturer, or when the term of the agreement expires and it is not extended for reasons beyond the control of the same, the foreign company shall indemnify them with an amount calculated on the basis of the equivalent

2

Canonlat did not learn of the suit until it was advised of same in January, 2005 by S.B. Technology. Canonlat maintains that it did not terminate its relationship with Lantech until it was unable to collect the delinquent payment.

On December 14, 2004, without prior notice to Canonlat, the Costa Rican court required Canonlat to post a one-million-dollar bond ($1,000,000.00) or discontinue importing goods to Costa Rica. After being informed of the lawsuit in January, 2005, Canonlat posted the bond, retained an attorney in Costa Rica and unsuccessfully tried to have the case moved to the United States.

On February 1, 2005, Canonlat filed in this Court, pursuant to the Agreement, an initial complaint for declaratory and injunctive relief. On May 11, 2005, Canonlat filed a six (6) count Amended Complaint seeking/alleging: a declaratory judgment as to the choice of law and forum provision of the Agreement (Count I); an injunction enjoining the parties from litigating in Costa Rica (Count II); breach of contract, alleging that Lantech failed to pay Canonlat for its products in Florida (Count III); open account (Count IV); "account stated," seeking back costs (Count V) and unjust enrichment, seeking damages (Count VI).

On August 17, 2006, Lantech filed its Answer to the Amended Complaint and Affirmative Defenses, asserting the following two affirmative defenses:

> (1) Canonlat's claims are barred because it has unclean hands in violating Costa Rica law, which actions are the subject of litigation brought in Costa Rica.

---

> of four months of gross profits for each year or fraction of time passed. The value of the indemnity in no event shall be calculated for a period exceeding nine years of service. ...
>         *    *    *
> **Article 6. - (Individual or corporation that partially or wholly assumes any business activity, which was performed previously by a foreign company through a representative, distributor or manufacturer. Liability).** The individual or corporation that partially or wholly assumes any business activity which was previously conducted by a foreign company through a representative, distributor or manufacturer shall be responsible for the continuity of the representation, distribution or manufacturing agreement, unless the foreign company had previously covered the pertinent indemnity.

Once again, the Court notes a difference in wording in the above version of Article 6, as it is plead in the Costa Rica complaint (See CR Compl. p. 21, ¶ Tenth) and that which is attached as an exhibit to Lantech's Motion for Summary Judgment. See van der Putten Decl. Ex. A.

    (2) Canonlat is equitably estopped from pursuing its claims by virtue of its conduct which is the subject of the litigation in Costa Rica.

  On July 6, 2006, Canonlat filed a Second Renewed Motion for Preliminary Injunction, which was heard by this Court on August 8, 2006. On September 27, 2006, this Court entered an Order Granting Second Renewed Motion for Preliminary Injunction ("Order"), in which the Court enjoined Lantech from taking any action in furtherance of the Costa Rica proceeding until the time this Court determines whether the Agreement's choice of law and forum selection provisions are valid and enforceable. Lantech has filed an appeal of that Order.

  On October 20, 2006, Lantech requested the Costa Rica court to suspend the Costa Rica proceeding. On December 14, 2006, the Costa Rica court suspended the case for six months, and on April 19, 2007, the court continued that suspension for an additional six months.

  On March 5, 2007, the Court entered an Agreed Final Judgment on Count III.[3]

## DISCUSSION

  In the two remaining counts of the Amended Complaint, Canonlat seeks a declaratory judgment that the choice of law, forum selection and non-exclusivity clauses of the Agreement are enforceable (Count I); and a permanent injunction enjoining the Costa Rica litigation (Count II). Canonlat moves for summary judgment as to both counts, as well as Lantech's two affirmative defenses. Lantech agrees that there is no issue of material fact as to Count I, but argues that the choice of law and forum clauses of the Agreement are not enforceable and additionally argues that there are issues of fact which preclude summary judgment as to Count II.

### I. Count I - Declaratory Judgment

A. Forum Selection Clause

  In its prior Order, this Court specifically recognized that although federal courts regard forum selection clauses (hereinafter "FSC") as presumptively valid, that presumption can be overcome "by a clear showing that the clauses are 'unreasonable under the circumstances.'" Roby v. Corporation of Lloyd's, 996

---

[3]The parties stipulated to the dismissal of Counts IV, V, and VI. (DE 222).

4

F.2d 1353, 1362-63 (2d Cir. 1993) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972)). This can be demonstrated when "(1) their formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy." Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1295 (11th Cir. 1993) (noting that forum-selection and choice-of-law clauses are "presumptively valid where the underlying transaction is fundamentally international in character.")[4]

Lantech argues that the FSC should not be upheld based on Article 7 of Law 6209, which states:

> Article 7: The jurisdiction of the Costa Rican courts of justice and the rights of the representative, distributor or manufacturer, by virtue of this law, cannot be waived.

Lantech did not specifically argue the applicability of this Article, nor the affect thereof, in its papers or in the hearing concerning the Second Renewed Motion for Preliminary Injunction. Rather, it appears that the first time Article 7 was specifically referenced is in Lantech's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, filed February 26, 2007. Lantech maintained at the hearing that it did not raise Article 7 previously because Law 6209 was not part of this lawsuit. This position is rejected, in that although Lantech had not brought a claim for violation of Law 6209 in this Court, the existence of that law was critical in this Court's analysis of whether a preliminary anti-suit injunction should be granted.

Canonlat initially argues that by failing to raise Article 7 as an affirmative defense, Lantech has waived its ability to rely on it. The Court finds merit in this argument. See Fed.R.Civ.P. 12(h).[5] Although waiver would not apply if Article 7 deprived this Court of subject matter jurisdiction, it is significant that in the anti-waiver cases referenced by the parties the issue of lack of subject matter jurisdiction is not discussed. For example, Lantech relies heavily on Jones v. GNC Franchising, Inc., 211 F.3d 495 (9th Cir.

---

[4] Florida courts also follow the Bremen analysis. Manrique v. Fabri, 493 So. 2d 437 (Fla. 1986).

[5] **(h) Waiver of Preservation of Certain Defenses.**
   (1)   A defense of ... improper venue ... is waived (A) if omitted from a motion in the circumstances described in subdivision (g), or (B) if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course.

5

2000), where the Court dealt with a statute that provided that "[a] provision in a franchise agreement restricting venue to a forum outside this state [California] is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state." Id. at 497 (quoting Cal. bus. & Prof. Code §20040.5 (West 1997)). Although the court ultimately refused, on public policy grounds, to transfer the case to Pennsylvania based on a contractual FSC, there was no discussion by the court that a Pennsylvania court would not have jurisdiction over such claims, only that venue would not be appropriate.

Similarly, there was no discussion of lack of subject matter jurisdiction in cases concerning claims brought pursuant to Puerto Rico Act No. 75 of 1964.[6] See D.I.P.R. Mfg., Inc. v. Perry Ellis Intern., Inc., 472 F. Supp. 2d 151 (D. Puerto Rico 2007); Maxon Engineering Svc., Inc. v. United Sciences, Inc., 34 F. Supp. 2d 97 (D. Puerto Rico 1998) (transferring case to Pennsylvania District Court); Arrogar Distributors, Inc. v. KIS Corp., 151 F.R.D. 221 (D. Puerto Rico 1993); see also E.&J. Gallo Winery v. Andina Licores S.A., 446 F.3d 984, 987, 991 (9th Cir. 2006)(discussing Ecuador Decree 1038-A (repealed), which provided that "any legal action brought under the law was to be heard by a judge at the Ecuadorian company's main residence," finding that "to the degree that Ecuadorian law does apply, federal courts are capable of applying it ... " (citing Fed.R.Civ.P. 44.1)); Elgin Sweeper Co. v. Melson, Inc., 884 F. Supp. 641, 647 (N.D.N.Y. 1995) (stating that in an action based on diversity of citizenship, "application of controlling foreign law would not divest this court of subject matter jurisdiction.")

Lantech itself does not refer to Article 7 in jurisdictional terms, but rather refers to it as an "express venue mandate" (Reply p. 5)(emphasis added). Venue is an affirmative defense, which if not raised in the

---

[6]Section 278b-2 of the Act states, inter alia, that "[a]ny stipulation that obligates a dealer to adjust, arbitrate or litigate any controversy that comes up regarding his dealer's contract outside of Puerto Rico, or under foreign law or rule of law, shall be likewise considered as violating the public policy set forth by this chapter and is therefore null and void." D.I.P.R. Mfg., Inc. v. Perry Ellis Intern., Inc., 472 F. Supp. 2d 151, 155 n. 5 (D. Puerto Rico 2007). Section 278c provides that"[t]he provisions of this chapter are of a public order and therefore the rights determined by such provisions cannot be waived." Arrogar Distributors, Inc. v. KIS Corp., 151 F.R.D. 221, 227 (D. Puerto Rico 1993).

initial responsive pleading, is deemed waived. See Fed.R.Civ.P. 12(h).[7] Accordingly, this Court finds that Lantech's argument concerning Article 7 is one of improper venue, which has been waived. This also dispenses with Lantech's argument that this Court should not enforce the FSC under Bremen because it will be "deprive[d] of a remedy."[8]

Lantech additionally argues that the Court should not enforce the FSC because to do so would violate Costa Rica's "strong public policy in favor of litigating the [Law 6209] claim within its borders ... ." Reply p. 3. This argument is also rejected. In Bremen, the Court stated that a court should not enforce a FSC if doing so would be against the public policy of "the forum in which the suit is brought, whether declared by statute or by judicial decision." 407 U.S. at 15 (emphasis added). This Court finds some merit in Lantech's argument that this statement was made due to the "reverse" procedural position of the parties in Bremen and subsequent cases where the action was filed by the party who was challenging enforcement of the clause. However, even if this Court were to consider the public policy of Costa Rica in addition to that of this forum to uphold FSCs, Lantech's argument would still fail. See E. & J. Gallo Winery v. Andina Licores, S.A., 440 F. Supp. 2d 1115 (E.D. Cal. 2006).

As Canonlat notes, many of the cases cited by Lantech either do not pertain to international agreements, precede Bremen, or have been overruled by subsequent case law. However, two of the cases deserve discussion because they contain venue anti-waiver clauses - Jones, supra, and E & J Gallo Winery v. Morand Bros. Beverage Co., 247 F. Supp.2d 973 (N.D. Ill 2002).

In Jones, a case removed to the California District Court, the Ninth Circuit Court of Appeal recognized that "strong public policy may be 'declared by statute.'" 211 F.3d at 498 (quoting Bremen, 407 U.S. 15). In performing the Bremen analysis, the court stated:

---

[7]Lantech has submitted the Declaration of Robert van der Putten, one of its attorneys who is licensed to practice in Costa Rica, who states that "Costa Rica maintains exclusive jurisdiction over Public Law 6209 claims." van der Putten Decl. ¶11. To the extent that this statement suggests that this Court would not have subject matter jurisdiction over a Law 6209 claim, the only authority cited for this position is from the courts handling the Costa Rica proceeding brought by Lantech. Respectfully, this Court is not bound by the pronouncements of that court, but rather by federal precedent.

[8]At no time during the pendency of this case did Lantech seek to bring its Law 6209 claim in this Court.

7

> By voiding any clause in a franchise agreement limiting venue to a non-California forum for claims arising under or relating to a franchise located in the state, § 20040.5 ensures that California franchisees may litigate disputes regarding their franchise agreement in California courts. [footnote omitted] We conclude and hold that § 20040.5 expresses a strong public policy of the State of California to protect California franchisees from the expense, inconvenience, and possible prejudice of litigating in a non-California venue. A provision, therefore, that requires a California franchisee to resolve claims related to the franchise agreement in a non-California court directly contravenes this strong public policy and is unenforceable under the directives of *Bremen*.

Id. at 498.

In E & J Gallo Winery, the court invalidated a forum selection clause designating California as contrary to Illinois public policy that agreements governed by the Illinois Beer Act be brought in Illinois. The Court stated that "it is clear that the Illinois Beer Act embodies Illinois' strong public policy in favor of having these issues litigated within its borders," and that "[a]llowing a privately contracted forum selection clause to supersede the Beer Act and its policies would frustrate the intention of the statute." Id. at 977-98.

Canonlat correctly distinguishes these cases by noting that the contracts there were not of "international character." Moreover, the record in the case before this Court is lacking as to proof that litigating Article 2 claims in Costa Rica represents Costa Rica's public policy. Lantech does present the Declaration of Costa Rican attorney Claudio Murillo, Esq., who states that "[t]he Republic of Costa Rica promulgated Public Law 6209 in order to protect Costa Rican companies who distribute the products of foreign manufacturers" (Murillo Decl. ¶9). However, there has been no showing that this Court cannot enforce this policy. Rather, the "policy" that Lantech argues will be violated by enforcement of FSC is the venue of Law 6209 claims.

With respect to the venue of Article 2 claims, recent developments in Costa Rica suggest that if Article 2 did at one time declare the public policy of Costa Rica, it no longer does. Canonlat notes that in August, 2004 (three months before Lantech filed its Costa Rica action), the United States and Costa Rica entered into the Dominican Republic-Central American Free Trade Agreement ("CAFTA-DR). Under the terms of Annex 11.13 of the Agreement, the government of Costa Rica has agreed to "repeal articles 2 and 9 of Law 6209, ... and its regulation ...," and to "enact a new legal regime that shall become

8

applicable to contracts of ... distribution ... and: ... (c) shall treat such contracts as establishing an exclusive relationship only if the contract explicitly states that the relationship is exclusive." See Canonlat Reply, Ex. 1; see also text at http://www.ustr.gov/Trade_Agreements/Bilateral/CAFTA-DR. Additionally, under the new regime, distribution contracts will be presumed to be subject to arbitration, which "may," not "must," take place in Costa Rica.   Id.   Although Costa Rica has not yet ratified the Agreement, the signing of CAFTA diminishes Lantech's argument that the public policy of Costa Rica requires litigation of Article 2 claims by a Costa Rica court.

Therefore, the Court finds that when weighing the "public policy" of Costa Rica with respect to Law 6209 Article 2 claims against the presumption of validity of forum selection clauses, the FSC in the Agreement is valid and enforceable and summary judgment will be granted in favor of Canonlat on this issue.

B. Choice of Law Clause

In the Amended Complaint, Canonlat alleges that "the Agreement establishes that all litigation shall be in Florida in accordance with Florida law." Am. Cmplt. ¶ 1 (emphasis in original). In its Response to Lantech's Cross Motion, Canonlat now acknowledges that "there is no choice of law clause expressly requiring that Florida law be applied to all substantive claims and ignoring any conflict of laws analysis." Resp. p. 14. Rather, the choice of law provision provides that the Agreement shall be governed by and construed in accordance with Florida law. Accordingly, Canonlat is not entitled to the declaration it seeks in its Amended Complaint on this issue, and summary judgment will be granted in favor of Lantech on this claim.

C. Non-Exclusivity Clauses

Finally, Canonlat requests a declaration that the "non-exclusivity clauses" in the Agreement are valid and enforceable. Because Canonlat already has a judgment on Count III, which alleged a breach of the Agreement, the only possible relevance of these clauses is as they relate to Lantech's claims under Law 6209. As Canonlat recognizes in its Reply, "[n]o [Law 6209 claim] is plead in the Amended Complaint or by Affirmative Defense, and there is no counterclaim." Reply p. 6.

This Court's authority is limited by the Constitution to resolution of "cases" and "controversies."

U.S. Const. Art. III, § 2. Whether a case and controversy exists depends on "'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Wendy's Intern., Inc. v. City of Birmingham, 868 F.2d 433, 436 (11th Cir. 1989) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)). The Court agrees with Lantech that there is no case and controversy before this Court to warrant a declaration regarding the validity and enforceability of the non-exclusivity clauses. Accordingly, Canonlat's motion for summary judgment on this issue will be denied.[9]

## II. Count II - Anti-Suit Injunction

Canonlat requests that this Court enter a permanent injunction enjoining the Costa Rica proceeding. This Court has the discretionary power to enjoin parties subject to its jurisdiction from pursuing parallel in personam litigation before foreign tribunals. See, e.g., Kaepa, Inc. v. Achilles Corp., 76 F.3d 624, 627 (5th Cir. 1996).

The Court thoroughly discussed the law on this claim in its prior Order, and adopts that discussion by reference herein. In summary, the Court applied the more liberal approach of In re Unterweser Reederei Gmbh, 428 F.2d 888 (5th Cir. 1970), aff'd on rehearing en banc, 446 F.2d 907 (1971), rev'd on other grounds sub nom., M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972), where the Court noted that antisuit injunctions have been granted by courts in equity when foreign litigation involving the same parties and issues would (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's in rem or quasi in rem jurisdiction; or (4) prejudice other equitable considerations. Id. at 890. This Court further found that the suit by Lantech frustrates the policy of this Court of enforcing FSCs, that Lantech's filing of the Costa Rica action had the evasive effect of attempting to avoid the FSC of the Agreement in the first instance, and that the Costa Rica proceeding was

---

[9]Canonlat's argument that Lantech has "waived" the lack of case and controversy because it did not assert it as an affirmative defense is rejected, in that the Court "has an ongoing obligation to, *sua sponte*, analyze and determine whether it has before it a justiciable case or controversy." Paragon Mgmt, LL.C. v. Slaughter, 437 F. Supp. 2d 1267, 1270 (N.D. Ala. 2006) (citing Fitzgerald v. Seaboard System R.R., 760 F.2d 1249, 1251 (11th Cir. 1985)).

vexatious due to the one million dollar bond that Canonlat had to post in order to avoid losing its right to import its products into Costa Rica.[10]

Lantech claims that issues of fact exist as to the initial requirements for an anti-suit injunction that the parties be sufficiently similar, arguing that Canonlat has failed to present any evidence that SB Technology is its agent or that its interests are otherwise being protected by Canonlat. However, this was not the basis of this Court's finding that the parties are substantially similar. Rather, the Court found that SB Technology was not a necessary party to the action:

> Assuming [Article 6] would apply to SB Technology, it can only be held liable for indemnity if Canonlat is held liable and fails to fully indemnify Lantech. Furthermore, if SB Technology is jointly and severally liable, as Lantech alleges, then Lantech can still pursue the claim against SB in Costa Rica. This Court finds that the existence of SB Technology as a party to the Costa Rica action should not prevent the issuance of an antisuit injunction.

Order p. 10.

Lantech offers the Declaration of Mr. Murillo in support of its argument that "SB Technology is jointly and severally liable under Public Law 6209." Memo. in Opp. p. 14 (citing Murillo Dec. ¶ 14A.) Although Mr. Murillo does make this statement, he subsequently states in paragraph 21 that the "legal conclusions a court will render under Public Law 6209 include ... C. Whether Santa Barbara Technology is a primary, and not nominal party under Public Law 6209" and "E. If Lantech is enjoined from pursuing its Public Law 6209 claim against Canonlat in Cost[a] Rica, can Lantech still maintain its claim against SB Technology." The Court is therefore not persuaded by Mr. Murillo's conclusion regarding joint and several liability, and reaffirms its original finding that the existence of SB Technology should not prevent the issuance of an antisuit injunction. See Mastercard Int'l. Inc. v. Argencard Socieded Anonima, No. 01 CIV. 3027 (JGK), 2002 WL 432379, at *10 (S.D.N.Y. March 20, 2002) (holding identity of party requirement satisfied despite intervention of an additional party in foreign proceeding since party was not

---

[10]The Court additionally found that even if it were to apply the more restrictive test and consider the concerns raised in Mutual Service Casualty Co. v. Frit Industries, Inc., 805 F. Supp. 919 (M.D. Ala. 1992), aff'd, 3 F.3d 442 (1993), an injunction would be proper; the action in Costa Rica does threaten this Court's jurisdiction, in that the choice of law provision provides that litigation as to the Agreement take place in Florida courts.

a necessary party to the action).

Lantech also argues that the claims are not sufficiently similar, in that it has stipulated to the breach of contract claim and the Court has dismissed the pending equitable claims, "[y]et this did not dispose of the issues in the Costa Rican action pertaining to Public Law 6209." Memo. in Opp. p. 14. This situation was created by Lantech, which chose to file the Costa Rica action, rather than bringing its Law 6209 claim in this Court by way of counterclaim. As this Court noted in its prior Order,

> although it may be true that a written contract is not necessary for the enforcement of an exclusive distribution arrangement under that law, the Costa Rican complaint is replete with references to the Agreement, which is attached as an exhibit. In that complaint, Lantech alleges that the Agreement "includes several paragraphs which violate the law for Protection of Foreign Company Representatives" (Compl. p. 2, ¶ Third). Lantech requests that the court declare that Canonlat "terminated the distribution relationship," (Compl. p. 23, ¶ Fifth) and find that paragraphs 11 and 19 of the Agreement are "null and void." (Compl. p. 26, ¶Twenty-First). Therefore, the effect and enforceability of the Agreement are placed directly at issue in the Costa Rican action, and this Court finds that the actions are sufficiently similar.

The Court finds that the question of whether the claims are substantially similar should not be determined based on the issues which currently remain pending before this Court, but rather the issues which were initially raised in both proceedings. The Court reaffirms its finding that the issues are sufficiently similar.[11]

Accordingly, the Court further finds that Canonlat has met the requirements for a permanent anti-suit injunction with respect to the Costa Rica proceeding.[12]

### III. Affirmative Defenses

Canonlat additionally moves for summary judgment as to Lantech's two affirmative defenses - unclean hands and equitable estoppel.

In order to establish the doctrine of "unclean hands" Lantech must prove the following two

---

[11]Because there is no Law 6209 claim currently before this Court, any issues of fact which pertain to that claim, as suggested by Lantech, are irrelevant.

[12]This Court again acknowledges that some courts have stated an additional requirement that the action in the enjoining court must be dispositive of the action in the foreign court. This Court finds that because of the significant overlap of issues in this case and the policy at issue, that is, the enforcement of a forum selection clause, the lack of this additional factor is not dispositive.

elements: "(1) the wrongdoing is directly related to the claim against which the defense is being asserted"; and (2) Lantech was "personally injured" by Canonlat's conduct. Turner Greenberg Assoc., Inc. v. C&C Imports, Inc., 320 F. Supp.2d 1317, 1335 (S.D. Fla. 2004). "The doctrine of [equitable] estoppel is applicable in all cases where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury." Major League Baseball v. Morsani, 790 So. 2d 1071, 1076 (Fla. 2001) (quoting State ex rel. Watson v. Gray, 48 So. 2d 84, 87-88 (Fla. 1950) (citation omitted)).

Lantech offers no legal support for its position that Canonlat's alleged violation of Law 6209 (1) constitutes "wrongdoing" which would prevent it from filing the claims raised in this lawsuit, or (2) constitutes inducement as to Lantech. Indeed, Lantech failed to even address Canonlat's argument regarding its affirmative defenses in its Memorandum of Law in Opposition, and furthermore stipulated to a judgment on Count III of the Amended Complaint. Finally, Lantech has demonstrated no injury as a result of Canonlat's conduct. Accordingly, summary judgment will be granted.

### IV. Attorneys Fees and Costs

Canonlat argues that it is entitled to an award of attorneys fees and costs as part of its compensatory damages, arguing that such damages are awardable for Lantech's breach of the forum selection clause. Canonlat did not allege a claim for breach of contract based on the FSC - rather, the FSC claim was for declaratory judgment, and the breach of contract count was based on the failure to pay for products. Although Canonlat may ultimately be entitled to costs as a prevailing party, upon proper motion, it is not entitled to costs as compensatory damages.

### CONCLUSION

The Court being otherwise fully advised in the premises, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff Canonlat's Motion for Summary Judgment (DE 206) is hereby:

**GRANTED** in part as to Count I, to the extent that the Court finds that the forum selection clause

13

of the Agreement is valid and enforceable. The Motion is **DENIED** in all other respects as to Count I;

**GRANTED** as to Count II, and Lantech is hereby enjoined from taking any action in furtherance of the Costa Rica proceeding; and;

**GRANTED** as to Lantech's Affirmative Defenses.

2. Defendant Lantech's Motion for Summary Judgment is hereby **GRANTED** in part as to Count I, to the extent that the Court finds that the choice of law clause is not valid and enforceable as to all substantive claims, as alleged in the Amended Complaint. The Motion is **DENIED** in all other respects.

3. Plaintiff Canonlat's request for attorneys fees is **DENIED**. The request for costs is **DENIED** without prejudice.

**DONE AND ORDERED** this __18th__ day of July, 2007 at Miami, Florida.

STEPHEN T. BROWN
U.S. MAGISTRATE JUDGE